STATE v. W. H. ELKS *et al.*

(Decided October 17, 1899.)

*Indictment, Forcible Trespass—Possession, Actual and Constructive—Title.*

1. Actual possession of part of the land embraced within a deed for 23 years is, by operation of law, co-extensive with the boundaries of the deed, and constitutes ownership of the whole tract.

2. Where a number of men, five or six, enter upon the land of another and proceed to cut down and carry off trees outside of the enclosure of the owner, and refuse to desist when the owner comes and orders them off, their conduct amounts to a forcible trespass, and it matters not on which side of the fence the owner stood and gave the orders for the trespassers to quit and leave.

INDICTMENT for forcible trespass, tried before *Hoke, J.*, at September Term, 1899, of the Superior Court of PITT County. The defendants were convicted, and from the judgment rendered against them appealed to the Supreme Court.

The case is fully stated in the opinion.

*Mr. Zeb. V. Walser,* for the State.
*Mr. T. J. Jarvis,* for defendants (appellants).

FURCHES, J. This is an indictment for forcible trespass upon land, and the facts disclosed by the trial, as stated in the case on appeal, are substantially as follows: That the prosecutrix, an "old colored woman," owned a small tract of land containing 20 acres; that she had lived on this land continuously for 29 years, and had a deed for the same, giving metes and bounds, for 23 years. That there was a field of cleared land around her dwelling house, enclosed by a fence, but that this fence did not extend to the

boundary line, as indicated by her deed, by about fifty yards; that the land between her fence and the boundary of her land, as indicated by her deed, was woodland; that she had been in the habit of getting wood and timber off this woodland, selling wood and timber off of it to others, and also to the defendant Elks, in the year 1898. That this woodland was in sight of the prosecutrix's residence, but some three hundred yards from her house.    That she saw defendants enter upon this woodland and commence cutting and carrying off the wood and timber, and she went to within thirty or forty yards of where defendants were engaged in cutting and carrying off said timber, and forbade them to do so; but they refused to stop, telling prosecutrix that she had no land, and continued to cut and carry off said timber, until prosecutrix had them arrested, under a State warrant, for said alleged trespass.    That she did not go nearer to the defendants, for the reason that she was afraid to do so, there being six of them, all white men, with axes and saws, and the defendant Elks having the reputation of being a violent and dangerous man.

The defendant Elks claimed that he was the owner of the *locus in quo,* and introduced a deed for the same dated in January, 1899, from some third party.

Upon this evidence the Court charged the jury, among other things, not excepted to, "that if they believed the evidence, the prosecutrix owned the land covered by her deed; and if prosecutrix went to place of the alleged trespass, in twenty or forty yards of defendants, and ordered them to desist and leave the premises, and the defendants, in her presence, and against her protest, and on land covered by her deed, continued to cut timber, the law would carry the force and effect of her possession to the outer boundaries of her deed; and if the language and conduct of the defendants were then and there such as were calculated to provoke the prosecutrix to a breach of

the peace, and their numbers such as to overawe resistance, or render it useless, defendants would be guilty; and this would be true though the prosecutrix never crossed her fence, but remained all the time within her enclosure."

Defendants excepted to so much of said charge as stated: "If alleged trespass was committed in presence of prosecutrix, and on land covered by her deed, the law would carry the force and effect of her possession to the boundary of her deed."

"Also to that portion which said it was not necesary for prosecutrix to have crossed her fence."

"Only that portion of charge is set out deemed necessary to give defendants their exceptions."

These are the only exceptions contained in the record, and we do not think they can be sustained. It was contended for defendants that the evidence was conflicting as to where the prosecutrix's line was, and that there was error in that part of the charge in which his Honor told the jury "that if they believed the evidence, the prosecutrix owned the land covered by her deed." But we see no error in this. There was no dispute but what the prosecutrix owned and had a deed for the land where she lived, and had been holding possession under said deed for 23 years; and the Court simply told the jury that she was the owner of that land up to the boundaries of her deed.

This was certainly correct, and the jury must have found that prosecutrix's deed covered this land. The Court instructed the jury that the law was that she was the owner to the line called for by her deed. He did not charge them where this line was, nor that the prosecutrix's deed covered the *locus in quo,* as defendants seem to think he did.

The prosecutrix being found to be in possession of the *locus in quo,* it would seem that the case is settled by *State v. Robbins,* 123 N. C., 730, and *State v. Lawson, Ibid,* 740. The

case of *State v. Robbins* is almost an exact counterpart of this case—the facts there being almost identically the same as those here. And the case of *State v. Lawson* is directly in point, in which the authorities are all collected and considered.

These two cases are the latest expression of this Court on the subject of forcible trespass, and must govern us in our judgment in this case. According to them, there is no error, and the judgment must be affirmed.

It is shown, at least in this case, that the meshes of the law have been sufficient to catch and hold the strong, and to protect the weak. There is no error, and the judgment is

Affirmed.

NOTE.—We feel it to be our duty to call the attention of the Judges and the profession to the frequent inadequacy of amounts at which appeal bonds are fixed, especially so in State cases where there are several defendants. As in this case. where there are five defendants, and the Attorney-General's cost is $50, to say nothing of the other costs, and yet the appeal bond is fixed at only $25.