THE STATE v. W. E. MILLS.

*Forcible Entry.*

Where the defendant went to a house then in the possession of prosecutor—the latter being present—and said, "This is my house and I mean to take possession of it," whereupon the prosecutor forbade him to enter, but the defendant did enter—using no force and making no demonstration of violence—and thereupon the prosecutor, to avoid a difficulty, went away: *Held,* that defendant was not guilty of a forcible entry.

This is an Indictment for Forcible Entry, tried at Fall
Term, 1889, of Polk Superior Court, *Merrimon, J.,* presiding.

The jury returned the following special verdict:

"One Perry Bomer was the tenant occupying the house
of T. T. Ballinger and others, and about the first day of
January, 1889, went to said Ballinger and told him that he
was going to move, and that he (Ballinger) might come and
take possession of the house. Ballinger went to the house,
went in and began nailing down the windows. While he
was thus engaged in the house, the defendant W. E. Mills
came, accompanied by an old negro man who carried some
things Mills intended to put in the house. Mills came to
the door of the house and said to Ballinger, 'This is my
house, and I mean to take possession of it.' Ballinger
forbade Mills to enter, but Mills went into the house. The
reason Ballinger allowed Mills to go into the house was to
avoid a difficulty. The defendant said that, as he entered
the house, one Garrison, from whom Ballinger and another
had purchased the house, was, or had acted, a damned
rascal; that it was his (defendant's) house, and he was going
to have it. * * * Ballinger made no effort to keep
Mills out, except to forbid him, in a quiet way, to enter.
The negro man accompanied Mills in, and Mills said to
the negro, 'Bring those things in here and throw them
down,' and the negro did so. Mills did not curse Ballinger
or threaten to use any violence—had no weapon. In reply
to what Mills said about Garrison, Ballinger told him that
'If there was any trouble between him and Garrison, they
could fight their own battles.' Ballinger then went away
and left Mills in possession."

The Court being of opinion that, upon the whole matter
of the foregoing special verdict, the defendant is not guilty.
It is ordered by the Court that a verdict of not guilty be
entered, and it is adjudged that the defendant be discharged,

STATE *v.* MILLS.

and that the prosecutor pay the costs of this indictment. State appealed.

*The Attorney General* and *Mr. W. J. Montgomery*, for the State.

*Mr. J. A. Forney*, for the defendant.

CLARK, J.: To constitute the offence of forcible trespass, there must be either actual violence used, or such demonstration of force as was *calculated* to intimidate, or alarm, or involve, or tend to a breach of the peace. *State* v. *Pearman*, Phil., 371. The show of force must be such as to create a reasonable apprehension in the adversary that he must yield to avoid a breach of the peace. *State* v. *Pollok*, 4 Ired., 305. In the present case there was neither display of weapons, threats of violence, nor unusual numbers. There was nothing said or done which should have intimidated or over-awed a man of ordinary firmness.

In *State* v. *Covington*, 70 N. C., 71, BYNUM, J., states the law so clearly and in a case so like ours that it is only necessary to cite it. In it, he says that bare words, however violent, cannot constitute the offence, and though words accompanied by display of weapons, by numbers, or other signs of force are sufficient, yet the demonstration of force must be such as is calculated to intimidate or create a breach of peace, and adds, "The law does not allow its aid to be invoked, by indictment, for rudeness of language, or even slight demonstrations of force against which ordinary firmness will be a sufficient protection." This case has been cited with approval in *State* v. *Lloyd*, 85 N. C., 573. In *State* v. *Hinson*, 83 N. C., 640, which was chiefly relied on by the State, the act of *riding* into the yard of a house occupied only by a woman, after being forbidden by her, and remaining there cursing her, was held such demonstration of force as was calculated to intimidate or put her in fear.

It is true that here defendant left to avoid a breach of the peace, but the demonstration of force was not such as to give him reasonable ground for apprehension, nor to intimidate him. The facts stated in the special verdict make only a bare civil trespass, or, at most, an "entry upon land after being forbidden." The defendant would not be guilty of the latter if he entered under a reasonable *bona fide* belief that he had the right to do so. *State* v. *Winslow*, 95 N. C., 649.

In *State* v. *Ross*, 4 Jones, 315, PEARSON, J., adverts to the fact that unless the demonstration of force is such as is calculated to put in fear or create a breach of the peace, it is no more than a civil trespass, and adds: "The Courts should keep a steady eye to this distinction, because individuals are under great temptation to convert civil injuries into public wrongs, for the sake of becoming witnesses in their own cases and *saving costs.*" Many eminent Judges have given caution against this growing tendency to settle private quarrels at public expense. *State* v. *Lloyd*, 85 N. C., 573.                                                    No error.